WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deborah Varner, et al., | No. CV-13-02562-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Mesa, City of, et al., | |
| Defendants. | |

Defendants Phillip Baxter, Mark Gonzales, and the City of Mesa have moved for summary judgment on all of Plaintiffs' claims. Doc. 40. Plaintiffs Deborah and Daniel Varner have moved for summary judgment on all but two of their claims. Doc. 44. The motions are fully briefed, and the Court heard oral arguments on February 17, 2015. For reasons set forth below, the Court will grant Defendants' motion for summary judgment and deny Plaintiffs' motion.

**I.   Background.**

This case involves five dogs, two women, and a police officer. The women are Deborah Varner and Deanna Arroyo. For many years, Arroyo has been rescuing dogs and cats from shelters that intended to euthanize the animals. Docs. 41, ¶¶ 3-4; 45-1 at 163. As a part of this effort, Arroyo founded Ohana Animal Rescue. Doc. 45-1 at 163. Arroyo operated Ohana, which at the time was not a registered non-profit, with the help of the non-profit Feathers Foundation. Docs. 41, ¶¶ 3-4; 45-1 at 164. Deborah Varner

also helped Arroyo, who is legally blind. Doc. 41, ¶ 5. Varner would drive Arroyo to animal shelters, help select dogs to rescue, and take certain dogs into her own home. *Id.*, ¶¶ 5-6. Arroyo and Ohana did not pay Varner for her work and there was not a formal agreement between them. *Id.*, ¶ 7; Doc. 41-9 at 4-8.

In 2012, Varner took five dogs – Lil Bit, Gidget, Charlie Brown, Sage, and Honey Boo Boo – into her home. Docs. 45, ¶ 110; 45-1 at 170. Arroyo claims, and Varner disputes, that Varner agreed to care for these dogs on behalf of Arroyo and Ohana. Doc. 45-1 at 170. Arroyo and Varner began to argue over who owned the dogs and who should have possession of them. *See* Doc. 41-2 at 10-15. Until Officer Baxter intervened, Varner had physical possession of the dogs. Doc. 45, ¶ 110.

On November 21, 2012, Arroyo contacted Officer Phillip Baxter and informed him that Varner had stolen her five dogs. Docs. 41-4, 41-5. Arroyo explained that Varner had agreed to foster dogs on behalf of Ohana Animal Rescue. Doc. 41-5 at 14-16. Arroyo claimed that Varner had picked up the dogs with the understanding that Varner would care for them on behalf of Ohana. Docs. 41-4 at 6-8; 41-5 at 16-19. Eventually, Arroyo told Baxter, the two women began to argue and Arroyo demanded the return of the five dogs. *See* Doc. 41-2 at 10-15. Arroyo showed Baxter several text messages between the women in which Arroyo consistently referred to the dogs as her dogs and demanded that Varner return them. *Id.* In the text messages, Varner refused to return the dogs and claimed that they belonged "to feathers and myself not you." *Id.* at 12. In one message, Varner stated that "you gave me these dogs and i [sic] never signed a foster agreement." *Id.* at 15.

Arroyo also showed Baxter documents from Maricopa County Animal Care and Control ("MCACC"). 41-2 at 21. These documents showed that as of November 17, 2012, the five dogs were registered under Arroyo's name. Doc. 41-2 at 21-23. They also showed that the dogs had been previously registered under the Feathers Foundation's name. *Id.* at 24-33. Later that day, and before he approached Varner, Baxter called

MCACC and confirmed that the dogs belonged to Arroyo. Doc. 45-1 at 8.[1]

During Arroyo's interview with Baxter, Arroyo also told Baxter that Varner might use a particular statute as a defense. Doc. 41-5 at 46. This statute, A.R.S. § 11-1001(10), states: "In § 13-1208 and in this article, unless the context otherwise requires . . . 'Owner' means any person keeping an animal other than livestock for more than six consecutive days." At the time, Baxter did not know of or understand the statute. Docs. 41-5 at 46; 45-1 at 14.

Based on the information Arroyo had given him, and after talking with his supervisor, Baxter went to Varner's home. Doc. 41, ¶¶ 27-28. Accompanying him was Officer Mark Gonzales. Doc. 45, ¶ 49. They arrived on November 22, 2012, Thanksgiving Day, at 8:07 a.m. Doc. 42-4 at 3. Baxter informed Varner about Arroyo's accusations and told her: "I have to get you to turn the dogs over 'cause there is documentation that she owns the dogs, that they are licensed to her." *Id.* at 5. Varner claimed that Arroyo had faked the documentation, that the dogs had always been with Varner, and that the dogs belonged to the Feathers Foundation. *Id.* at 5-8. Varner also explained that registering a dog requires proof of vaccination and that Arroyo couldn't have vaccinated the dogs because she never possessed them. *Id.* at 6. During the conversation, Varner admitted that at least two of the dogs belonged to Arroyo. *Id.* at 11. Varner did not show the officers any papers to contradict the MCACC documents or support her claim of ownership. Docs. 41, ¶ 35; 48, ¶ 35.

Varner refused to return the dogs. As a result, Baxter told her she was under arrest for theft, handcuffed her, and placed her in his police car. Doc. 42-4 at 11-14. Baxter then called Arroyo and asked her to come and pick up the dogs. *Id.* at 14-15. After Arroyo had retrieved the dogs, Baxter released Varner with a citation for misdemeanor theft under A.R.S. § 13-1802(A)(1). Doc. 41-2 at 2. The theft charge was ultimately

---

[1] In response to Defendants' statement of facts, Plaintiffs argued that there was no evidence of this phone call. Doc. 48, ¶ 24. At oral argument, however, Plaintiffs conceded that Baxter testified to this fact in his deposition, stated that they did not have evidence to the contrary, and agreed that the Court could take this fact as undisputed.

dismissed without court proceedings.  Docs. 41, ¶ 52; 41-2 at 7.

## II.   Summary Judgment.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.   Analysis.

Plaintiffs assert claims under 42 U.S.C. § 1983 for unreasonable arrest and unreasonable seizure, as well as state-law claims for false imprisonment, malicious prosecution, conversion, intentional infliction of emotional distress, negligence, and negligent supervision or hiring.  Doc. 1-1 at 14-20.

### A.   Section 1983: Unreasonable Arrest.

#### 1.   Qualified Immunity.

Under § 1983, a person may bring suit against a police officer who, "'while acting in his official capacity or while exercising his responsibilities pursuant to state law,'" *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000) (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988)), deprived him of his Fourth Amendment right to be free from an unreasonable search or seizure.  *See Monroe v. Pape*, 365 U.S. 167, 171 (1961), *overruled on other grounds by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  The

police officer, however, may be protected by the doctrine of qualified immunity, which "provides an immunity from suit rather than a defense to liability and ensures that 'officers are on notice their conduct is unlawful' before being subjected to suit." *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Government officials are protected by qualified immunity "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second prong "asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1866. "Courts have discretion to decide the order in which to engage these two prongs." *Tolan*, 134 S. Ct. at 1866 (citing *Pearson*, 555 U.S. at 236).

The Court will focus its inquiry on the first-prong – whether Defendants arrested Varner without probable cause, thereby violating her Fourth Amendment rights. Because qualified immunity is an immunity from suit, the Court may decide on summary judgment whether probable cause existed at the time of the arrest so long as "the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts[.]" *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003); *see also Conner v. Heiman*, 672 F.3d 1126, 1130-31 (9th Cir. 2012) (discussing when a court may grant summary judgment on probable cause).

### 2. Probable Cause.

"It is well established that 'an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983.'" *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (quoting *Borunda v. Richmond*, 885

F.2d 1384, 1391 (9th Cir. 1988)). Probable cause "is not a high bar: It requires only the 'kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014) (quoting *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013)). Probable cause to arrest exists if "'at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005) (quoting *United States v. Bernard*, 623 F.2d 551, 559 (9th Cir. 1980)); *see Beck v. Ohio*, 379 U.S. 89, 91 (1964). "This is an objective standard that asks whether an officer's behavior was reasonable at the time of arrest, not whether a more reasonable approach could be constructed years later in litigation." *Flores v. Maricopa Cnty.*, No. CV09-0945-PHX-DGC, 2010 WL 960416, at *3 (D. Ariz. Mar. 15, 2010).

"Once probable cause is established, 'an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused.'" *Cameron v. Craig*, 713 F.3d 1012, 1019 (9th Cir. 2013) (quoting *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003)). Under the collective knowledge doctrine, a court looks to the collective knowledge of all the officers involved in the criminal investigation. *Torres v. City of L.A.*, 548 F.3d 1197, 1207 (9th Cir. 2008).

The precise question here is whether Officers Baxter and Gonzales, at the moment they arrested Plaintiff Deborah Varner, had probable cause to believe she had committed the crime of theft. Under Arizona law, a person commits theft "if, without lawful authority, the person knowingly . . . controls property of another with the intent to deprive the other person of such property[.]" A.R.S. § 13-1802(A)(1).

At the moment Officer Baxter arrested Ms. Varner, he was aware of a number of facts. He knew that Arroyo claimed ownership of the dogs; he had heard the story that explained why the dogs were in Varner's possession; he had examined MCACC documents that showed the five dogs were registered to Arroyo; and he had called

MCACC to confirm that the dogs belonged to Arroyo.  Baxter was also aware that Varner disputed Arroyo's ownership and claimed that Arroyo had falsified the documents that purportedly proved Arroyo's ownership.  He also knew, however, that Varner had admitted that at least two of the dogs belonged to Arroyo, also claimed that the dogs belonged to Feathers, and showed him no documents supporting her claim of ownership.

Varner and Arroyo's respective stories each contained the possibility of truth, although Varner did admit that at least two of the dogs belonged to Arroyo.  If Baxter had arrested Varner on the basis of nothing more than the contradictory claims of the two women, this would be a closer case.  But Baxter had documents from MCACC confirming Arroyo's ownership, and he had called MCACC to confirm that ownership. The documents and the phone confirmation were the type of "reasonably trustworthy information" officers may rely upon in forming probable cause.  *Beck*, 379 U.S. at 91. The officers clearly had probable cause to conclude that Arroyo owned the dogs and Varner was committing theft under § 13-1802(A)(1).[2]

Numerous courts have held that evidence from government records or databases may support a finding of probable cause.  *See United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014) (finding probable cause based on informant's statements corroborated by government databases); *United States v. Bernacet*, 724 F.3d 269, 275 (2d Cir. 2013) (finding police had probable cause to believe defendant was in violation of his parole based on a database report that defendant was on parole), *cert. denied*, 134 S. Ct. 806 (2013); *United States v. Southerland*, 486 F.3d 1355, 1359-60 (D.C. Cir. 2007) (finding that police had probable cause to arrest based on a database report that defendant's driver's license was suspended); *Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 928

---

[2] Defendants cite a number of additional undisputed facts to support their motion: Varner, after her arrest asked Officer Baxter if she could buy the dogs (Docs. 41, ¶ 37; 48, ¶ 37); Varner later called the Mesa Police Department and said that the dogs belonged to Feathers Foundation and she was never going to keep them (Docs. 41, ¶ 42; 48, ¶ 42); and Baxter called Feathers Foundation after the arrest and was told that the dogs belonged to Arroyo (Docs.41, ¶¶ 43-45; 48, ¶¶ 43-45).  The Court will not consider these facts because they occurred after the arrest and therefore are not relevant to the question of whether probable cause existed at the time of the arrest.

1  (9th Cir. 2001) (finding that a database report of an arrest warrant established probable
2  cause to arrest, and collecting cases that have so held).  The Court sees no reason why a
3  MCACC report that lists the owner of an animal should be considered less reliable than
4  reports from the Department of Motor Vehicles or other government agencies.[3]

### 3. Dog Ownership Laws.

Plaintiffs argue that A.R.S. § 11-1001(10) establishes Varner's ownership of the dogs.  This statute states: "In § 13-1208 and in this article, unless the context otherwise requires . . . 'Owner' means any person keeping an animal other than livestock for more than six consecutive days."  Since Varner kept the dogs for more than six consecutive days, Plaintiffs argue, she was the "owner" of these animals.  For two reasons, Plaintiffs' reading of the statute is incorrect.

First, the statute's definition of owner is expressly limited to A.R.S. § 13-1208 and the article in which A.R.S. § 11-1001 is contained.  Section 13-1208 is a criminal dog-bite statute that imposes liability on persons who allow dogs within their control to injure another.  The article in which § 11-1001 is found is titled "Animal Control" and addresses the licensing, vaccination, and control of dogs.[4]  Thus, by its terms, § 11-1001 does not define the "property of another" for the purpose of the theft statute, A.R.S. § 13-1802.

Plaintiffs argue that § 11-1001(10)'s phrase "unless the context otherwise requires" demonstrates that the Court may import its definition to other statutes.  Plaintiffs have it backwards.  Section 11-1001(10) establishes the meaning of "owner" in the specifically identified statutes – § 13-1208 and the article in which it is found – "unless the context otherwise requires."  Thus, the reference to "context" refers to the

---

[3] In arguing that the MCACC documents were not reliable, Plaintiffs assert that the documents had incorrect birth dates or genders for three of the dogs. Doc. 53. But they provide no evidence to suggest that Officer Baxter was aware of this fact.

[4] Among other purposes, the "Animal Control" statute, like § 13-1208, protects the public from dog attacks.  *See* A.R.S. § 11-1020 ("Injury to any person . . . by a dog while at large shall be the full responsibility of the dog owner."); 11-1014.01(A) (control an aggressive dog); 11-1010(A) (dogs are required to be vaccinated for rabies).

identified statutes. The definition applies to those statutes unless *their* context requires otherwise. The reference to "context" is not a general license to apply the definition of owner to Arizona statutes generally.[5]

Arizona courts applying § 11-1001(10) distinguish between a legal owner who had property rights in a dog and a "statutory owner" for purposes of Arizona's animal control statutes. *See Spirlong v. Browne*, 336 P.3d 779 (Ariz. Ct. App. 2014). The Arizona Court of Appeals noted in *Spirlong* that the dog in question ("Joop") was "owned" by Mayes, who had sole responsibility for its care. *Id.* at 781. The question addressed in the case, however, was whether Mayes' landlord, Browne, was a "statutory owner" of Joop for purposes of liability under the dog bite statute. *Id.* (the question is "whether, as a matter of law, Browne was Joop's owner under the dog bite statutes ('statutory owner')"). Arizona law thus recognizes that a person can be an "owner" within the meaning of the animal control statute without being the dog's legal owner.

Second, Plaintiffs' reading of § 11-1001(10) would lead to absurd results. A person who left her dog with a caretaker for more than six days while on vacation would lose ownership of the dog to the caretaker. A person who stole a dog could become its legal owner by keeping it for six days. Arizona courts do not adopt statutory interpretations that are absurd. *Bilke v. Arizona*, 80 P.3d 269, 271 (Ariz. 2003) (citing *Marquez v. Rapid Harvest Co.*, 358 P.2d 168, 170 (Ariz. 1960)).

For these reasons, the Court concludes that § 11-1001(10) does not provide a definition of animal ownership that applied to Varner for purposes of the theft statute. Varner might have been the "statutory owner" of one of the dogs for purposes of the dog bite statute if she had allowed the dog to bite someone while the dog was in her care, but § 11-1001(A) has no further effect. It did not make her the legal owner of the five dogs

---

[5] The Court also notes that A.R.S. § 1-215, not § 11-1001, is the statute that provides definitions for "the statutes and laws of this state[.]" Under this statute, property is defined as including real and personal property, and personal property is defined as "money, goods, chattels, dogs, things in action and evidences of debt. A.R.S. § 1-215(29). This statute suggests that traditional notions of property ownership apply to dog ownership, not the unique definition in § 11-1001(10).

- 9 -

1    when she was interviewed by Officers Baxter and Gonzales.

2       Plaintiffs also rely on a Mesa City Ordinance that states: "As used in this Chapter, unless the context otherwise indicates, the following terms shall have the meanings herein ascribed to them. . . . Owner: Any person or legal entity having a possessory property right in an animal or who harbors, cares for, exercises control over, or knowingly permits any animal to remain on premises occupied by them." Mesa, AZ, Code § 6-4-1. But this too is an animal control law. Like § 11-1001(10), is seeks to affix responsibility for purposes of animal control laws, not for purposes of general animal ownership. The ordinance does not show that Officers Baxter and Gonzales lacked probable cause to believe the five dogs belonged to Arroyo.

### 4. Adequacy of the Investigation.

Plaintiffs also argue that Baxter's investigation was inadequate and one-sided. Doc. 44 at 10-13. Plaintiffs emphasize that an "officer is not entitled to a qualified immunity defense . . . where exculpatory evidence is ignored that would negate a finding of probable cause." *Broam*, 320 F.3d at 1032 (citing *Kuehl v. Burtis*, 174 F.3d 646, 651 (8th Cir. 1999)). While this is a correct statement of law, the Court finds that the officers did not ignore exculpatory evidence. Baxter had spoken with both women, considered their version of events, reviewed text messages, reviewed the MCACC documents, called MCACC, and knew that Ms. Varner provided no documents to support her claim of ownership.

"Once probable cause to arrest someone is established, . . . a law enforcement officer is not 'required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or [other defense].'" *Id.* at 1032 (quoting *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979)). Officer Baxter had probable cause to believe that Varner was "knowingly . . . control[ing] property of another with the intent to deprive the other person of such property." A.R.S. § 13-1802(A)(1). Nothing more was required to make the arrest. Plaintiffs' argument, if accepted, would require an officer to halt an arrest the instant a suspect protests her

innocence. That is not the law.

Plaintiffs also emphasize that Arroyo mentioned § 11-1001(10) to Baxter as a possible argument Varner would make. They argue that Baxter failed to conduct a reasonable investigation when he did not read the statute or seek legal advice regarding it. But Plaintiffs do not assert that Varner ever mentioned § 11-1001(10) to Baxter as a basis for her ownership claim, and in fact she did not. *See* Doc. 42-4 at 1-11 (transcript of arrest). Moreover, as explained above, § 11-1001(10) was not exculpatory. It did not support Varner's claim of ownership. The Court concludes that an officer in Baxter's position does not lack probable cause because someone other than the person being investigated tells him of a highly questionable statutory argument that might be made, but is not made, by the person being investigated.[6]

### 5. Conclusion.

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds no genuine dispute of material fact that Officers Baxter and Gonzales had probable cause to arrest Varner for violating A.R.S. § 13-1802(A)(1). The Court will grant summary judgment on Plaintiffs' § 1983 claim for unreasonable arrest.

### B. Section 1983: Unreasonable Seizure.

Plaintiffs claim that Baxter and Gonzales unreasonably seized Varner's dogs in violation of her Fourth Amendment rights. As with the unreasonable arrest claim, Plaintiffs argue that the officers lacked probable cause to believe that the dogs belonged to Arroyo. A police officer may make a warrantless seizure of property if he has probable cause to believe the property was stolen. *See Sanders v. City of San Diego*, 93 F.3d 1423, 1427 (9th Cir. 1996). As discussed above, Officers Baxter and Gonzales had probable cause to believe that the five dogs belonged to Arroyo. The Court therefore grants Defendants summary judgment on Plaintiffs' § 1983 claim for unreasonable

---

[6] Even if Baxter were mistaken as to the meaning of § 11-1001, this would not necessarily preclude a finding of probable cause. The Supreme Court recently re-affirmed that an officer may have a reasonable suspicion of criminal activity even though the suspicion is based on a reasonable mistake of law. *Heien v. North Carolina*, 135 S. Ct. 530, 539-40 (2014).

- 11 -

seizure.

C.   **State Law Claims.**

Plaintiffs assert state-law claims for false imprisonment, malicious prosecution, conversion, intentional infliction of emotional distress, negligence, and negligent hiring or supervision. Under Arizona law, "[w]here there is no factual dispute, probable cause is always a question of law for the [C]ourt." *Hansen v. Garcia*, 713 P.2d 1263, 1265 (Ariz. Ct. App. 1985) (citing *Sarwark Motor Sales, Inc. v. Woolridge*, 354 P.2d 34 (Ariz. 1960)).

In light of the Court's finding that Officers Baxter and Gonzales had probable cause to arrest Ms. Varner and seize the five dogs, all of Plaintiffs' state-law claims fail as a matter of law. *See id.* at 1265-66 (holding that because probable cause existed to arrest the plaintiff, summary judgment was appropriate on the plaintiff's malicious prosecution, false arrest, false imprisonment, gross negligence, negligence, and civil rights claims); *see also Cullison v. City of Peoria*, 584 P.2d 1156, 1160-61 (Ariz. 1978) (same with respect to false imprisonment, malicious prosecution, and gross negligence claims).

For the claims of false imprisonment and malicious prosecution, "[t]he law is well settled that the existence of probable cause is a complete defense[.]" *Hockett v. City of Tucson*, 678 P.2d 502, 505 (Ariz. Ct. App. 1983). For the claim of conversion, the existence of probable cause shows that the officers did not exercise "wrongful dominion" over the five dogs. *See Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) ("Conversion is defined as 'an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another.'"). For the claim of intentional infliction of emotional distress, the Court finds that arresting Varner and seizing the five dogs based on probable cause did not amount to "extreme and outrageous" conduct. *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987).

Plaintiffs also assert claims for negligence and gross negligence. Doc. 1-1 at 14. Defendants argue that police officers are immune from claims for simple negligence and

- 12 -

therefore the Court should only consider Plaintiffs' claim for gross negligence. Doc. 40 at 16 (citing *Landeros v. City of Tucson*, 831 P.2d 850, 851 (Ariz. Ct. App. 1992)). Federal district courts are divided on the question of whether a police officer is immune under Arizona law from a claim that he negligently arrested a person. *Compare Wright v. City of Phoenix*, No. CV-11-00181-PHX-GMS, 2011 WL 4071993, at *4 (D. Ariz. Sept. 13, 2011) (finding immunity), *with Cable v. City of Phoenix*, No. CV-12-00216-PHX-JAT, 2013 WL 6532023, at *12 (D. Ariz. Dec. 13, 2013) (finding no immunity). The Court finds it unnecessary to decide this issue. Assuming that a police officer could be liable for his negligence in effecting an arrest, summary judgment is still appropriate.

The tort of negligence requires breach of the duty "to conform to the legal standard of reasonable conduct in the light of the apparent risk." *Stanley v. McCarver*, 92 P.3d 849, 854 (Ariz. 2004) (citation omitted). As discussed, the arrest of Ms. Varner and the seizure of the five dogs were based on probable cause and therefore were objectively reasonable. The officers, therefore, were not negligent or grossly negligent.

Finally, Plaintiffs have claimed that the City of Mesa negligently hired and supervised Officers Baxter and Gonzales. "For an employer to be held liable for the negligent hiring, retention, or supervision of an employee, a court must first find that the employee committed a tort." *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004) (citing *Mulhern v. City of Scottsdale*, 799 P.2d 15, 18 (Ariz. Ct. App. 1990)). Plaintiffs have not shown that Defendants committed a tort. Plaintiffs' claim for negligent supervision or hiring therefore fails as a matter of law.

**IT IS ORDERED THAT**

1. Defendants' motion for summary judgment (Doc. 40) is **granted.**
2. Plaintiffs' motion for summary judgment (Doc. 44) is **denied.**

3. The Clerk is directed to enter judgment for Defendants and terminate this action.

Dated this 20th day of February, 2015.

*David G. Campbell*
United States District Judge